# ORIGINAL

# In the United States Court of Federal Claims

No. 14-760C
(Filed: August 18, 2015)

**NOT FOR PUBLICATION**

FILED

AUG 18 2015

U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| JOHN JAY POWERS,<br><br>        Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>        Defendant. | Inmate Trust Fund; Inmate Financial Responsibility Program; Motion to Dismiss; RCFC 12(b)(1); RCFC 12 (b)(6); Subject-Matter Jurisdiction; Statute of Limitations |

John Jay Powers, Florence, CO, pro se.

Daniel S. Herzfeld, Trial Attorney, with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington DC, for defendant. Marli J.P. Kerrigan, Assistant General Counsel, Litigation Branch, Federal Bureau of Prisons, United States Department of Justice, of counsel.

## OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

Pending before the court is defendant's motion to dismiss plaintiff's amended complaint for lack of jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC) and for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). See Def.'s Mot., Mar. 30, 2015, Dkt. No. 20.

Plaintiff, an inmate at the United States Penitentiary, Administrative Maximum Facility, in Florence, Colorado (ADX Florence), filed his amended complaint against the

United States, acting through the Bureau of Prisons (BOP), on February 2, 2015.[1]  See Am. Compl., Dkt. No. 11.  Plaintiff alleges that:  (1) the BOP wrongfully imposed monetary sanctions against him as restitution for prison property he destroyed; (2) the BOP mismanaged his inmate trust fund account; (3) the BOP coerced him into signing a debt management agreement, known as a "50/50 Agreement;" (4) the BOP engaged in other abusive debt collection practices; and (5) the BOP failed to afford him due process. See id. ¶¶ 3(B)-(H), 4-5, 6(B).

Plaintiff asserts that the BOP's conduct violated various statutes and regulations, specifically 28 U.S.C. §§ 1321, 1322 (governing trust funds); 15 U.S.C. § 1692 (Fair Debt Collection Practices Act (FDCPA)); 31 U.S.C. §§ 3701, 3711, 3716(e)(1) (Debt Collection Improvement Act); and 28 C.F.R. § 11.4 (addressing Purpose and Scope, Administration of Debt Collection). See id. ¶¶ 2, 6(D), 6(G)-(I).  Plaintiff asserts further that the BOP breached its implied agreement to process payments intended for deposit into plaintiff's trust fund account in a timely manner, see id. ¶ 6(A), and breached the 50/50 Agreement "by failing to consolidate all legitimate or claimed debts" subject to it, see id. ¶ 6(C).

Plaintiff also contends that the BOP violated his constitutional rights, in particular: (1) his right to petition the government under the First Amendment, see id. ¶ 6(I); (2) his right to due process under the Fifth Amendment, see id. ¶ 6(D); and (3) his right to relief from the imposition of excessive fines under the Eighth Amendment, see id. ¶¶ 6(E)-7. Plaintiff complains that the BOP has acted in "bad faith and with malicious intent" by fraudulently imposing debt on him.  See id. ¶ 5.

Plaintiff seeks:  (1) a preliminary injunction to "unencumber" the funds in his trust fund account; (2) a declaratory judgment invalidating his debt; (3) certification of his claim as a class action; (4) and monetary damages.  See id. ¶ 7.  As he brings his claim without counsel, plaintiff asks the court to "allow or appoint" counsel.[2]  See id.

In support of his claims, plaintiff attached a number of exhibits to his amended complaint, including copies of:  (1) an American Lawyer article discussing plaintiff and other inmates at ADX Florence, see Dkt. No. 11 (pagination added), at 10-14; (2)

---

[1]    On August 21, 2015, plaintiff filed an Application to Proceed In Forma Pauperis. See Dkt. No. 2.  The application is **GRANTED**.

[2]    On July 9, 2015, the court issued an order "request[ing] plaintiff's consent to the court's referral of this case to the Court of Federal Claims Bar Association Pro Bono/Attorney Referral Pilot Program for the potential representation of plaintiff by counsel," and directing plaintiff to file a notice of consent by July 22, 2015.  See Dkt. No. 23.  On August 7, 2015, the order was returned to the court as undeliverable.

plaintiff's inmate disciplinary record, see id. at 15; (3) a one-page excerpt from plaintiff's "Acknowledgement of Inmate" form, see id. at 16; (4) various financial reports reflecting plaintiff's trust fund account balances and transaction history, see id. at 17-19; and (5) a copy of the 50/50 Agreement executed on April 26, 2011 by plaintiff and ADX Florence, see id. at 20-22.

On March 30, 2015, defendant filed a corrected motion to dismiss plaintiff's amended complaint pursuant to RCFC 12(b)(1) and 12(b)(6). See Def.'s Mot. Attached to the motion were copies of: (1) plaintiff's public information/inmate data, dated September 19, 2014, see id. at A1-A6; (2) plaintiff's inmate disciplinary record, see id. at A7-A26; (3) various financial reports reflecting plaintiff's trust fund account balances and transaction history, see id. at A1-A7, A27-A38; (4) a copy of the 50/50 Agreement, see id. at A39-A43; (5) a memorandum dated July 9, 2013 regarding encumbrances placed on plaintiff's inmate trust fund account during his incarceration at a U.S. Medical Center for Federal Prisoners, in Springfield, Missouri, see id. at A42-A44; (6) documentation related to a claim plaintiff filed, and later withdrew, under the Federal Torts Claim Act (FTCA), see id. at A52-A59; and (7) an ADX Florence Institution Supplement regarding the Inmate 50/50 Program, see id. at A45-A51.

Plaintiff filed a response to defendant's motion to dismiss, see Resp. to Def.'s Mot., April 18, 2015, Dkt. No. 21, and defendant replied, see Def.'s Reply, April 27, 2015, Dkt. No. 22, attaching a copy of the Trust Fund/Deposit Fund Manual dated May 29, 2014, see id., Attach. 1.

The court finds that it lacks jurisdiction over most of plaintiff's claims. The court further finds that plaintiff's contract and takings claims fail to state a claim upon which relief can be granted. Therefore, defendant's motion to dismiss is **GRANTED**, and plaintiff's complaint is **DISMISSED** in its entirety.

I.      Background[3]

While serving time at ADX Florence, plaintiff maintains an inmate trust fund account. See Am. Compl. ¶ 3(C). By statute, funds of federal prisoners are designated as "trust funds." 31 U.S.C. § 1321(a)(21)-(22). The purpose of the trust fund is to serve as a type of bank account into which inmates' families, friends, or other authorized sources can make deposits. See 28 C.F.R. § 506.1. Inmate trust fund monies are appropriated and disbursed in compliance with the terms of the trust set forth in the BOP's Trust Fund/Deposit Fund Manual. See Trust Fund/Deposit Fund Manual, BOP Program

---

[3]     The facts recited in this section do not constitute findings by the court; rather, unless otherwise noted, all of the stated facts are either undisputed or assumed to be true for the purpose of the pending motion to dismiss.

Statement No. 4500.10 at 15. The BOP is responsible for managing and maintaining the trust fund accounts. See id. at 15-16. At the discretion of the Warden or other authorized source, an inmate may pay for merchandise and services at the prison commissary using his or her trust fund account. See id. at 16. Inmate funds may be encumbered as a result of a disciplinary hearing sanction or at the Warden's discretion. See id. at 71. Funds that the Warden encumbers are released only upon the Warden's approval or upon an inmate's release. See id.

To encourage inmates to meet their legitimate financial obligations, the BOP has implemented the Inmate Financial Responsibility Program (IFRP). See BOP Program Statement No. 5380.08 at 1. The IFRP allows federal facilities to assist inmates in developing financial plans to meet their responsibilities. See id. In concert with that program and in accordance with the terms of the Inmate Trust Fund/Deposit Fund Manual, ADX Florence has implemented and administers a "50/50 Program." See Def's Mot. at A45. The locally administered 50/50 Program allows the institution to collect debts that the inmates owe to the government—but have not settled otherwise—because they have failed either to remit payment or to maintain employment. See id. at A46. Once the inmate enters into an agreement to participate in the 50/50 Program with the facility, a payment system automatically encumbers half of the incoming funds received by the inmate until the encumbered funds can be consolidated to pay off the debt. See id. at A46-A47, A50. Under the terms of the 50/50 Agreement, "any new debts incurred for any reason [after an inmate enters into the 50/50 Agreement] will not be considered a part of [the executed] agreement and [thus] will need to be paid as incurred." See id. at A40. Encumbered funds remain in the trust fund account until the inmate consents to their withdrawal. See Trust Fund/Deposit Fund Manual at 87-88.

Inmate records show that a Disciplinary Hearing Officer (DHO) ordered plaintiff to pay restitution for destroying government property (valued at more than $100), among other offenses, between 2000 and 2014. See Am. Compl. ¶ 3(B); Def's Mot. at A7-A22. As of April 26, 2011, plaintiff allegedly owed $8,498.06 to the government.[4] See Am. Compl. ¶ 3(G). Plaintiff claims that the BOP imposed this debt without a "due process hearing." See id. ¶ 7(A). Plaintiff adds that amount of debt the BOP imposed was "false," including a $7,600 bill for restitution. See id. ¶¶ 3(H)(1), 7(B). Plaintiff

---

[4] From the information before the court it is unclear how much, if any, of the $8,498.06 debt has been paid to the government at the time plaintiff filed this action. Plaintiff contends that as of April 3, 2015, he is "due and ow[ed]" an amount of $1,226.29, if the court finds the encumbrance on his trust fund account to be unlawful. See Resp. to Def.'s Mot. ¶ 4(I). Also unclear is whether plaintiff accrued any additional debt after April 2011 and, if so, whether those debts are included in his claims here. In any event, the court concludes that disposing of plaintiff's instant claims does not require it to resolve these factual issues.

contends that the BOP "maliciously punish[ed] plaintiff by depriving him of access to his trust fund account," see id. ¶ 5(A), and violated his "Eighth Amendment Rights by using an alleged debt as an instrument of punishment . . . ," see id. ¶ 6(E).

In essence, plaintiff asserts that the BOP mismanaged his trust fund account and "knowingly created unlawful impediments" to his use of the trust fund monies. See id. ¶ 6(B). He complains that the BOP "coerce[d]" him into entering into the 50/50 Agreement with ADX Florence. See id. ¶ 3(F). Plaintiff also accuses the BOP of breaching the 50/50 Agreement by failing to consolidate all legitimate or claimed debts, see id. ¶ 6(C), and by failing to endorse and deposit funds into his trust fund account and then failing to make those funds readily available to him, see id. ¶ 6(A).

Alleging that the BOP's effort to collect debt from him, and from others similarly situated, is part of "a pattern of abusive practices" that violate various federal debt collection statutes, see id. ¶¶ 3(H), 6(G)-(H), plaintiff seeks class action certification of the matter and demands equitable relief. See id. ¶ 7.

II.   Subject-Matter Jurisdiction

The subject-matter jurisdiction of the United States Court of Federal Claims must be addressed as a threshold matter because it defines the court's power to hear a case. See PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007); McGrath v. United States, 85 Fed. Cl. 769, 771 (2009). Subject-matter jurisdiction may be addressed at any time by the parties, by the court sua sponte, or even on appeal, see Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993), and the plaintiff bears the burden of establishing jurisdiction, see Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998). A plaintiff must establish jurisdiction by a preponderance of evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995).

As a general matter, complaints filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Therefore, pleadings submitted by pro se plaintiffs to this court will be liberally construed. See Cosma-Nelms v. United States, 72 Fed. Cl. 170, 172 (2006). For claims brought by pro se plaintiffs, the court "'searches the record to see if [a] plaintiff has a cause of action somewhere displayed.'" Goel v. United States, 62 Fed. Cl. 804, 806 (quoting Boyle v. United States, 44 Fed. Cl. 60, 62 (1999), aff'd 200 F.3d 1369 (Fed. Cir. 2000)). But, the court has "'no duty . . . to create a claim which [the plaintiff] has not spelled out in his pleading.'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (internal citations omitted). A pro se plaintiff is never relieved of his or her obligation to satisfy jurisdictional requirements. See Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987). If the court determines it does not have subject-matter jurisdiction, it must dismiss the action. See RCFC 12(h)(3).

The Tucker Act is the primary source of jurisdiction for this court.  See Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002).  The Act provides that this court shall have the authority to resolve "any claim against the United States founded either upon the Constitution, or any act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  "The Tucker Act does not, however, provide a substantive right to relief and, standing alone, is insufficient to grant jurisdiction to this court." Riser v. United States, 93 Fed. Cl. 212, 216 (2010) (citing Martinez v. United States, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003) (en banc)).  "The plaintiff must identify a separate contract, regulation, statute, or constitutional provision, which, if violated, provides for a claim of money damages against the United States." Smith v. United States, 495 F. App'x 44, 47 (Fed. Cir. 2012) (unpublished per curiam).  Thus, "not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." United States v. Mitchell, 463 U.S. 206, 216 (1983).

In this case, plaintiff refers to 28 U.S.C. § 1346(a)(2) as the basis for this court's jurisdiction over his claims.[5] See Am. Compl. ¶ 2.  Also known as the "Little Tucker Act," this provision provides that the district courts share jurisdiction with the Court of Federal Claims over:

> Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41.

28 U.S.C. § 1346(a)(2).

Like the Tucker Act, a plaintiff proceeding under the Little Tucker Act must still invoke a separate money-mandating source of substantive law to support jurisdiction.

---

[5]     Plaintiff also invokes, among other cases, Gravatt v. United States, 100 Fed. Cl. 279 (2011), as a one of the jurisdictional bases for his claims.  However, as explained above, this court's jurisdiction is not derived from case law, but from the Tucker Act, 28 U.S.C. § 1491.

See Fisher v. United States, 402 F.3d 1167, 1172 (2005) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").

The jurisdiction of this court is further limited by a six-year statute of limitations. See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-35 (2008). The statute of limitations provides that claims over which the Court of Federal Claims would otherwise have jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." See 28 U.S.C. § 2501. Under the Tucker Act, a claim accrues "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue . . . for his [or her] money.'" Martinez, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)).

Lastly, the court may grant injunctive and declaratory relief under a narrow set of circumstances only. See 28 U.S.C. § 1491(a)(2)-(b)(2) (vesting the court with power, on behalf of military personnel, to "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States," and permitting the court to grant declaratory and injunctive relief in actions involving government contract solicitations). Otherwise, the court is unable to grant such relief.

As explained in further detail below, the court finds that plaintiff's complaint contains claims over which this court does not have jurisdiction.

A.     The Court Lacks Subject-Matter Jurisdiction over Most of Plaintiff's Constitutional Claims

Plaintiff contends that the BOP "violated [his] First Amendment right to access the courts." See Am. Compl. ¶ 6(I). This right is derived from the Petition Clause of the First Amendment, which protects the "[r]ight of people . . . to petition the government for redress of grievances." U.S. Const. amend. I; see also Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731 (1983); accord Borough of Duryea v. Guarnieri, 131 S. Ct. 2488, 2494 (2011) ("'[T]he Petition Clause protects the rights of individuals to appeal to courts

and other forums established by the government for resolution of legal disputes.'")
(citations omitted).[6]

The court is without jurisdiction to hear plaintiff's constitutional claim for court
access under the First Amendment. Although the Petition Clause of the First Amendment
affords access to the court, it does not provide for the payment of money. See May v.
United States, 534 F. App'x. 930, 933 (Fed. Cir. 2013) ("[T]he Petition Clause of the
First Amendment . . . do[es] not mandate the payment of money by the government for
violations.") (unpublished per curiam). Thus, plaintiff's First Amendment claim must be
**DISMISSED** for lack of jurisdiction.

Plaintiff also claims that the BOP violated his due process rights under the Fifth
Amendment by failing to process his debt in accordance with federal regulations and
statutory provisions. The court, however, has no jurisdiction to hear this claim because
the Due Process Clause is not money-mandating. See Carruth v. United States, 627 F.2d
1068, 1081 (Ct. Cl. 1980) (court has no jurisdiction over claims under Due Process
Clause of Fifth Amendment because that constitutional provision does not obligate
Federal Government to pay money damages). Accordingly, plaintiff's due process claim
under the Fifth Amendment must be **DISMISSED** for lack of jurisdiction.

Plaintiff further claims that the BOP violated his rights under the Eighth
Amendment by "using an alleged debt as an instrument of punishment" against him. See
Am. Compl. ¶ 6(E). The Eighth Amendment prohibits the government from imposing
excessive fines and from inflicting "cruel and unusual punishment," U.S. Const. amend.
VIII, but it does not mandate the payment of money, see Trafny v. United States, 503
F.3d 1339, 1340 (Fed. Cir. 2007). Thus, the court lacks jurisdiction over plaintiff's claim
brought under the Eighth Amendment, and it too must be **DISMISSED** for lack of
jurisdiction.

---

[6]     For inmates, such as plaintiff, the right of access to the courts also derives from
the Equal Protection Clause of the Fourteenth Amendment. See Bounds v. Smith, 430
U.S. 817 (1977) (affirming the district court's grant of summary judgment on the grounds
that the State was denying inmates reasonable access to the courts and equal protection of
the laws as guaranteed by the First and Fourteenth Amendments). However, the Equal
Protection Clause of the Fourteenth Amendment does not provide for the payment of
money, see LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (holding that
the equal protection guarantees of the Fourteenth Amendment do not mandate the
payment of money damages by the government), and the court cannot exercise
jurisdiction over such claims.

B.    The Court Lacks Subject-Matter Jurisdiction over Plaintiff's Various
       Claims of Statutory Violations

Plaintiff alleges that the BOP imposed debt and placed encumbrances on his trust
account in violation of debt collection statutes. See Am. Compl. ¶ 7. Because
jurisdiction to hear claims founded upon the Fair Debt Collection Practices Act (FDCPA)
rests with district courts, this court cannot hear them. See 15 U.S.C. § 1692k(d)
(providing for civil remedies under the FDCPA in federal district court); Cox v. United
States, 105 Fed. Cl. 213, 218 (2012) ("[T]he Court of Federal Claims is not a [federal]
district court."); see also Wagstaff v. United States, 105 Fed. Cl. 99, 100 (2012)("[B]oth a
federal district court and a federal appellate court have ruled that the United States has
not waived its sovereign immunity with respect to [FDCPA] claims."); accord Wagstaff
v. U.S. Dept. of Educ., 509 F.3d 661, 663–64 (5th Cir. 2007) (construing 15 U.S.C. §
1692a(6)(C) as neither "unequivocally nor expressly waiving the Federal Government's
sovereign immunity").[7] Accordingly, plaintiff's FDCPA claims must be **DISMISSED**
for lack of jurisdiction.

The court also finds that it has no jurisdiction over plaintiff's asserted claims
under the various debt collection provisions set forth in the Debt Collection Improvement
Act. See Am. Compl. ¶ 8. Among the various statutory provisions plaintiff invokes are:
(1) section 3701 which enumerates the definitions and applications of debt procedures;
(2) section 3702 which vests authority in various government officials to settle and adjust
claims; (3) section 3711 which pertains to collection and compromise procedures for
claims; and (4) section 3716 which provides for administrative offset. See 31 U.S.C. §
3711 et seq. Because none of these provisions mandate the payment of money as would
be required for this court to exercise jurisdiction over these claims, see McNeil v. United
States, 78 Fed. Cl. 211, 223-24 (2007), aff'd, 293 F. App'x 758 (Fed. Cir. 2008)
(unpublished per curiam), they must be **DISMISSED** for lack of jurisdiction.

C.    The Court Lacks Subject-Matter Jurisdiction to Hear Plaintiff's Claims
       Sounding in Tort

Plaintiff claims that:  (1) the BOP engaged in a "pattern of abusive practices" to
collect debt from him; (2) the BOP acted in "bad faith and with malicious intent" toward
him; and (3) the BOP coerced him into entering a payment plan pursuant to the executed
50/50 Agreement. See Am. Comp. ¶¶ 3(H), 3(H)(7), 5. Plaintiff also claims that the
BOP imposed upon him responsibility for false debt and fraudulent restitution bills and
then "manipulat[ed] Trust Fund Procedures in order to benefit third-party contractors."

---

[7]    Moreover, any officer or employee of the United States or any State collecting or
attempting to collect any debt in the performance of his official duties is not a "debt
collector" under the FDCPA. See 15 U.S.C. § 1692a(6)(C).

See id. ¶¶ 3(H)(1), 7(I). The court construes these allegations as claims for wrongful conduct and fraud.

Plaintiff also complains that the BOP "plac[ed] liens, restrictions, and 'encumbrances' on [his] trust fund account[]," see id. ¶ 3(H)(4), and then stopped "all account activity except deposits," see id. ¶ 3(E). Plaintiff further complains that the BOP "breached an implied contract" by failing to make timely deposits into his trust fund account and by failing to make those account funds promptly available for his personal use. See id. ¶ 6(A). The court construes these allegations as claims for account mismanagement and for breach of fiduciary duty.

Claims of negligence, wrongful conduct, coercion, or fraud that arise from the discharge of duties by a government officer sound in tort. See Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998); see also Edelmann v. United States, 76 Fed. Cl. 378, 381 (2007) ("Plaintiffs' claims of . . . coercion . . . are tort claims."); accord De-Tom Enters. Inc. v. United States, 213 Ct. Cl. 362, 370-71 (1977). Claims that the BOP breached a fiduciary duty owed to plaintiff as to the administration and management of his trust fund also sound in tort. See Spencer v. United States, 98 Fed. Cl. 349, 357 (2011); see also Regents of the Univ. of N.M. v. Knight, 321 F.3d 1111, 1116 (Fed. Cir. 2003); McNeil, 78 Fed. Cl. at 236.

This court has no jurisdiction to hear tort claims. See Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008); see also 28 U.S.C. §1491(a)(1) (excluding claims "sounding in tort" from the Court of Federal Claim's jurisdiction). Because plaintiff's claims of wrongful conduct, fraud, coercion, account mismanagement, and breach of fiduciary duty all sound in tort, they must be **DISMISSED** for lack of jurisdiction.

       D.     The Court Lacks Subject-Matter Jurisdiction over Plaintiff's Requests for Equitable Relief

Plaintiff asks the court to issue a preliminary injunction to "unencumber" the money in his trust fund account and to issue a declaratory judgment that defendant is without "authority to make up its own rules as to how debt(s) will be collected." See Am. Compl. ¶ 7, 7(E). The court may grant equitable relief only under a narrow set of circumstances. See 28 U.S.C. § 1491(b)(2); see also First Hartford Corp. Pension Plan & Tr. v. United States, 194 F.3d 1279, 1294 (Fed. Cir. 1999). Because plaintiff requests for equitable relief do not fall within this set of narrow circumstances, such requests must be **DISMISSED** for lack of jurisdiction.

E.    Plaintiff's Request for the Resolution of Claims More Than Ten Years Old
      Is Time-Barred

Plaintiff asks the court to find that his $7,600 restitution bill is fraudulent and that
the debt he allegedly accrued between 2000 and 2005 is "null and void." See Am.
Compl. ¶ 7(B), (H). The parties' filings indicate that the circumstances giving rise to
these claims occurred nearly ten years ago. See id.; Def.'s Mot. at A18. Because the
statute of limitations for claims in this court is six years, the court is without jurisdiction
to hear these claims, see John R. Sand & Gravel Co., 552 U.S. at 133-34 (2008), and they
must be **DISMISSED**.

III.    Failure to State a Claim Upon Which Relief Can Be Granted

For a plaintiff to overcome a RCFC 12(b)(6) motion, plaintiff's "complaint must
contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court must accept the facts alleged in
the complaint as true and draw inferences from the facts in the light most favorable to
plaintiff. See Hornbeck v. United States, 601 F.3d 1382, 1384 (Fed. Cir. 2010). A
motion under RCFC 12(b)(6) calls into question the legal theory of the complaint; not the
sufficiency of the evidence. See Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.
Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993). The court must dismiss a claim if the facts,
accepted as true, would nonetheless not entitle a party to a legal remedy. See RCFC
12(b)(6); Lindsey v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

Plaintiff alleges that the BOP's failure to consolidate his debts under the 50/50
Agreement was a breach of contract. See Am. Compl. ¶ 6(C); Resp. to Def.'s Mot. ¶
4(F). Plaintiff adds that the BOP "breached an implied contract" by failing to make
timely deposits into his trust fund account and by failing to make those funds readily
available to him for his personal benefit. See Am. Compl. ¶ 6(A).

The Tucker Act confers on this court jurisdiction to hear claims against the United
States that are founded upon "express or implied" contracts with the United States. 28
U.S.C. §1491(a)(1). To state a claim for breach of an implied-in-fact contract, a plaintiff
must plead the following four elements: "(1) mutuality of intent to contract; (2)
consideration; (3) lack of ambiguity in offer and acceptance; and (4) actual authority in
the government representative to bind the government." Barrett Ref. Corp v. United
States, 242 F.3d 1055, 1060 (Fed. Cir. 2001). A well-pleaded, non-frivolous allegation of
an express or implied-in-fact contract in a complaint is sufficient to survive a
jurisdictional challenge. See Spruill v. Merit Sys. Prot. Bd., 978 F.2d 679, 686 (Fed. Cir.
1992); see also Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1353 (Fed. Cir. 1997).

To the extent plaintiff asserts a breach of contract claim (whether implied or express), he fails to state a claim upon which relief can be granted. The various forms and payment agreements (including the 50/50 Agreement)—upon which plaintiff relies to support his contract claims are part of a broader administrative and statutory scheme governing his inmate trust fund account. See Def.'s Reply, Attach. 1, at 16; see also Dudley v. United States, 61 Fed. Cl. 685, 688 (2004) ("The court agrees with the government that withdrawals from plaintiff's prison account are regulated by statute not by contract."). This scheme provides that the relationship between the two parties is not a contractual one; rather, the trust accounts constitute a "privilege" subject to the limitations imposed by the BOP. See Trust Fund/Deposit Fund Manual at 16. Because the trust is automatically established for each inmate while he or she is held within a prison facility under the custody of the United States Attorney General or an appropriate designee, the contractual elements of offer, acceptance, and consideration do not exist. Cf. Am. Compl. 16 (copy of an "Acknowledgement of Inmate" form attached by plaintiff to his amended complaint, authorizing the Director of the BOP or a designee to endorse all checks, money orders, bank drafts, or other forms of negotiable instruments on plaintiff's behalf). In the absence of a contract, an allegation of breach of contract cannot be maintained. Accordingly, plaintiff has failed to state a breach of contract claim upon which relief can be granted.

To the extent plaintiff has asserted a takings claim under the Takings Clause of the Fifth Amendment—as defendant suggests—plaintiff also fails to state a claim upon which relief can be granted. Defendant argues that plaintiff asserts a takings claim by alleging that his trust fund account has been encumbered. See Def.'s Mot. 11; Am. Compl. ¶¶ 3(H)(4), 5(C). The Takings Clause of the Fifth Amendment prohibits the taking of private property "for public use, without just compensation." See U.S. Const. amend. V. Even if the court were to find that an encumbrance on plaintiff's trust fund account constitutes property, such property was not "taken" for public use, as is required under the takings clause. See id.; see also Def.'s Mot. at 11-12. Accordingly, plaintiff has failed to state a takings claim upon which relief can be granted.

Defendant also argues that plaintiff has alternatively asserted an illegal exaction claim under the Takings Clause of the Fifth Amendment. This court has been recognized to have jurisdiction over illegal exaction claims "when the exaction is based upon an asserted statutory power," see Aerolineas Argentinas v. United States, 77 F.3d 1564, 1573 (Fed. Cir. 1996); see also Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1008 (Ct. Cl. 1967) (finding that the Court of Claims had jurisdiction over exaction "based upon a power supposedly conferred by a statute") (citation omitted), and where that the statutory provision giving rise to the alleged exaction provides, either expressly or by necessary implication, for money damages, see Norman v. United States, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (citation and quotations omitted). Because the court has held that the debt collection statutes upon which plaintiff relies are not money-mandating, plaintiff has failed to state an illegal exaction claim upon which relief can be granted

IV.    Transfer of this Case Is Not in the Interest of Justice

Having determined that plaintiff's claims must be dismissed, the court now considers whether it is in the interest of justice to transfer plaintiff's complaint to a district court. See 28 U.S.C. § 1631 ("[T]he court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed."); 28 U.S.C. § 610 (defining "courts" to include, among other things, "district courts of the United States, . . . [and] the United States Court of Federal Claims"); see also Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374-75 (Fed. Cir. 2005) (stating that the Court of Federal Claims should consider whether transfer is appropriate once the court has determined it lacks jurisdiction). A transfer may be in the interest of justice when the filed claims are non-frivolous and should be decided on the merits. See Galloway Farms, Inc. v. United States, 834 F.2d 998, 1000 (Fed. Cir. 1987). But, even if a claim is non-frivolous, a court still may decline to transfer a case "[i]f such transfer 'would nevertheless be futile given the weakness of plaintiff's case on the merits.'" Spencer, 98 Fed. Cl. at 359 (quoting Faulkner v. United States, 43 Fed. Cl. 54, 56 (1999)). The court finds that transferring plaintiff's constitutional and statutory claims would be futile given their weakness on the merits.

In addition, transferring plaintiff's torts claims to district court would be futile. See 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall first have presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."); 28 C.F.R. § 543.30-.32 (administrative procedure for inmate claims under the Federal Tort Claims Act (FTCA)). Plaintiff filed his FTCA claim with the BOP's Northwest Regional Office in November 2007, see Def.'s Mot. A52-56, but then withdrew the claim in March 2008, see id. at A57-58. Because plaintiff's claim was not "finally denied" in accordance with FTCA exhaustion requirements, it is not in the interest of justice to transfer his tort claims to a district court.

V.    Conclusion

For the foregoing reasons, the court finds that it lacks jurisdiction over most of plaintiff's claims, specifically:  the constitutional claims, the claims alleging statutory debt collection violations, the claims sounding in tort, and the requests for equitable relief. As to plaintiff's remaining claims, the court finds that plaintiff has failed to state a claim upon which relief can be granted, specifically:  plaintiff has not stated a claim for breach of contract (whether implied or express), nor has plaintiff stated a claim for a taking or illegal exaction under the Fifth Amendment. Moreover, the court does not find

that transfer of plaintiff's complaint is in the interest of justice.  Defendant's motion to dismiss is **GRANTED**, and plaintiff's complaint is **DISMISSED** in its entirety. Plaintiff's application to proceed in forma pauperis is **GRANTED**.  Plaintiff's request for the appointment of counsel is **DENIED AS MOOT**.  The Clerk of Court shall enter judgment for defendant.  No costs.

IT IS SO ORDERED.

PATRICIA E. CAMPBELL-SMITH
Chief Judge